UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**ORIGINAL**

| | |
|---|---|
| **ADAPTIVE MARKETING LLC, a Delaware Limited Liability Company**<br>　　　　　　　Plaintiff<br>　　v.<br>**CONSUMERINFO.COM, INC., a California Corporation**<br>　　　　　　　Defendant. | CIVIL ACTION NO. _____<br><br>COMPLAINT |

　　　　Plaintiff ADAPTIVE MARKETING LLC hereby files this Complaint for trademark infringement, cybersquatting, unfair competition and false designation of origin, and unfair or deceptive acts or practices against Defendant CONSUMERINFO.COM, INC. Plaintiff ADAPTIVE MARKETING LLC alleges on personal knowledge as to its own actions, and on information and belief as to the actions of others, as follows:

### PARTIES

　　　　1.　　ADAPTIVE MARKETING LLC ("Plaintiff" or "Adaptive") is a Delaware limited liability company with its principal place of business located at 20 Glover Avenue, Norwalk, Connecticut 06850.

　　　　2.　　Upon information and belief, Defendant CONSUMERINFO.COM, INC. ("CIC" or "Defendant") is now, and at all times mentioned in the Complaint was, a California corporation with its principal place of business located in this Judicial District at 18500 Von Karman Avenue, Suite 900, Irvine, California 92612.

### JURISDICTION AND VENUE

　　　　3.　　This is an action for trademark infringement, cybersquatting and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (collectively, the "Lanham Act"), and for unfair methods of

competition and unfair or deceptive acts or practices under the Connecticut Unfair Trade Practices Act ("CUTPA").

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b) and 15 U.S.C. §§ 1116 and 1121. This Court has supplemental jurisdiction over Plaintiff's claims for unfair methods of competition and unfair or deceptive acts or practices under the laws of the State of Connecticut pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendants in that they transact business in the State of Connecticut and in this District.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) in that the Defendants are entities or individuals subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

### Adaptive Background

7. Adaptive is a premier marketer of membership programs and/or products that offer healthcare, security and credit protection services, and shopping discounts to consumers throughout the United States. In connection with its business, Adaptive owns several trademarks, many of which are federally registered, designating its various discount membership programs.

8. CIC is a competitor of Adaptive in the business of providing credit reporting and monitoring services. CIC's marketing and business strategies rely substantially on misleading consumers with deceptive Uniform Resource Locaters ("URLs") that take advantage of Adaptive's goodwill in Adaptive's well-known FREESCORE.COM and FREETRIPLESCORE.COM domains. CIC intentionally deceives consumers into believing its goods and services are associated with Adaptive so that it can profit at Adaptive's expense.

9. Adaptive owns and operates several well-known and famous websites, including those resolving on the Internet at the URLs <FREESCORE.COM> and <FREETRIPLESCORE.COM> (collectively, the "Adaptive FreeScore Domain Names").

10. Adaptive began using FREESCORE.COM in June 2008 and FREETRIPLESCORE.COM in December 2007.

11. Adaptive began using the Adaptive FreeScore Domain Names as trademarks at least as early as December 2007 ("Adaptive FreeScore Trademarks"). Adaptive has used these

marks substantially, exclusively, and continuously in the nearly three years since then, in Connecticut and throughout the United States.

12. Adaptive heavily advertises the Adaptive FreeScore Trademarks in a variety of media, including through television and online advertisements.

13. Adaptive has spent millions of dollars to advertise and promote the Adaptive FreeScore Trademarks and Adaptive FreeScore Domain Names.

14. Adaptive's advertising and promotion of the Adaptive FreeScore Trademarks, Adaptive FreeScore Domain Names and related brands have been highly successful. The Adaptive FreeScore Domain Names have received approximately 1,500,000 to 2,000,000 million unique visitors per month.

15. As a result of Adaptive's advertising and promotion, the Adaptive FreeScore Trademarks have become famous throughout the United States, and are widely associated with the Adaptive FreeScore Domain Names and products.

### CIC's Conduct

16. CIC competes directly with Adaptive by marketing and operating websites that sell services related to credit reports, credit scores and credit monitoring (the "Competing Credit Services").

17. CIC registered and took possession of the <FREECREDITSCORE.COM> domain name (the "Infringing Domain Name") in or around October 2009.

18. In or around May 2010, CIC launched a $10-15 million dollar advertising campaign, promoting FREECREDITSCORE.COM as its premier brand. See **Exhibit A**.

19. CIC has registered and used the Infringing Domain Name with a bad faith intent to profit from the Adaptive FreeScore Trademarks.

20. CIC's use of the Infringing Domain Name trades on Adaptive's valuable goodwill by using Adaptive's trademarks and brands to drive consumers to CIC's competing websites and to purchase CIC's Competing Credit Services.

### FIRST CLAIM FOR RELIEF

### (Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1125)

21. Adaptive repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

22. Adaptive is the sole owner of the Adaptive FreeScore Trademarks, which Adaptive has been using in interstate commerce to describe its business and services exclusively and continuously since as early as 2007.

23. As a result of its use and promotion of the Adaptive FreeScore Trademarks, Adaptive has built up and now owns valuable goodwill that is symbolized by these trademarks.

24. The Adaptive FreeScore Trademarks have acquired secondary meaning within the credit services and monitoring industry in that customers and consumers of credit score and monitoring products and services identify a single source of the websites, products and services that employ the Adaptive FreeScore Trademarks.

25. CIC has used reproductions, copies and or colorable imitations of the Adaptive FreeScore Trademarks in interstate commerce to market CIC's competing products and services.

26. CIC's acts alleged herein are likely to cause confusion, to cause mistake, or to deceive consumers as to the origin, sponsorship or approval of products and services for credit scores and monitoring. The acts alleged herein are further likely to cause confusion as to the affiliation, connection or association between CIC and its products and services and those of Adaptive.

27. By reason of CIC's acts, Adaptive has suffered, and will continue to suffer, damage to its business reputation and goodwill, and the loss of sales and profits it would have made but for CIC's acts, in an amount to be proven at trial.

28. Adaptive has no adequate remedy at law to compensate for the injuries suffered and/or threatened and, if CIC's activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to its goodwill and reputation.. Accordingly, Adaptive is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## SECOND CLAIM FOR RELIEF

### (False Advertising and Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))

29. Adaptive repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

30. The use of false, misleading or fake URLs is prohibited by Google Inc.'s advertising policies.

31. On information and belief, CIC's use of deceptive, false and misleading URLs actually deceives or has the tendency to deceive a substantial segment of Adaptive's customers and prospective customers.

32. On information and belief, this deception is material, in that it will likely influence purchasing decisions of customers and potential customers exposed to the deceptive URLs.

33. By reason of CIC's acts as alleged herein, Adaptive has suffered, and will continue to suffer, damage and harm to its business, reputation and goodwill and loss of profits and sales Adaptive would have made but for CIC's conduct.

34. The conduct of CIC alleged herein constitutes unfair competition and false advertising in violation of Lanham Act Section 43(a)(1)(B).

35. CIC's conduct will continue unless enjoined by the Court.

36. Adaptive has no adequate remedy at law to compensate for the injuries suffered and/or threatened and, if CIC's activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to its goodwill and reputation.. Accordingly, Adaptive is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

### THIRD CLAIM FOR RELIEF

**(Cybersquatting Under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1))**

37. Adaptive repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

38. The Infringing Domain Name is confusingly similar to the Adaptive FreeScore Trademarks, which were distinctive and/or famous at the time CIC registered the Infringing Domain Name.

39. CIC registered and has used the Infringing Domain Names with a bad-faith intent to profit from the Adaptive FreeScore Trademarks.

40. CIC's activities as alleged herein violate the federal Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

41. Adaptive has no adequate remedy at law to compensate for the injuries suffered and/or threatened and, if CIC's activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to its goodwill and reputation.

## FOURTH CLAIM FOR RELIEF

### (Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42-110a *et seq.*)

42. Adaptive repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

43. The Connecticut Unfair Trade Practices Act was enacted to prohibit, and protect persons from, deceptive and unfair business practices.

44. CIC's actions enumerated above constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce. The aforesaid acts of CIC offend public policy as established by statutes, common law, and otherwise. These actions are immoral, unethical, oppressive, and/or unscrupulous.

45. CIC's actions have caused, and continue to cause, substantial injury to Adaptive and consumers, and Adaptive has suffered an ascertainable loss of money and property as a result of these actions.

46. CIC's actions constitute unfair trade practices in violation of § 42-110b of the Connecticut General Statutes.

47. Adaptive has no adequate remedy at law to compensate for the injuries suffered and/or threatened and, if CIC's activities are not enjoined, Adaptive will continue to suffer irreparable harm and injury to its goodwill and reputation.

48. Pursuant to Conn.Gen.Stat. § 42-110g(c), Adaptive has or will have mailed copies of this Complaint to the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection of the State of Connecticut.

## FIFTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

49. Adaptive repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

50. As a result of its use and promotion of the Adaptive FreeScore Trademarks, Adaptive has built up and now owns valuable goodwill in Connecticut and throughout the United States that is symbolized by these trademarks.

51. CIC has used reproductions, copies and or colorable imitations of the Adaptive FreeScore Trademarks to market CIC's competing products and services in Connecticut and throughout the United States.

52. CIC's acts alleged herein are likely to cause confusion, to cause mistake, or to deceive consumers as to the origin, sponsorship or approval of products and services for credit scores and monitoring. The acts alleged herein are further likely to cause confusion as to the affiliation, connection or association between CIC and its products and services and those of Adaptive.

53. CIC's actions constitute trademark infringement under the common law of the State of Connecticut.

54. By reason of CIC's acts, Adaptive has suffered, and will continue to suffer, damage to its business reputation and goodwill, and the loss of sales and profits it would have made but for CIC's acts, in an amount to be proven at trial.

55. Adaptive has no adequate remedy at law to compensate for the injuries suffered and/or threatened, and if CIC's activities are not enjoined, Adaptive will continue to suffer irreparable harm and injury to its goodwill and reputation.

## SIXTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

56. Adaptive repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

57. CIC's actions constitute unfair competition under the common law of the State of Connecticut.

58. By reason of CIC's acts, Adaptive has suffered, and will continue to suffer, damage to its business reputation and goodwill, and the loss of sales and profits it would have made but for CIC's acts, in an amount to be proven at trial.

59. Adaptive has no adequate remedy at law to compensate for the injuries suffered and/or threatened, and if CIC's activities are not enjoined, Adaptive will continue to suffer irreparable harm and injury to its goodwill and reputation.

## PRAYER FOR RELIEF

WHEREFORE, Adaptive requests that the Court enter judgment in its favor and against Defendant on its claims as follows:

A. Granting an injunction preliminarily and permanently enjoining and restraining CIC and/or CIC's officers, agents, servants, employees, affiliates, parent or subsidiary corporations, attorneys, and all those in privity or acting in concert with CIC from:

(i)   using the Adaptive FreeScore Trademarks in any form or close variation thereof, including in domain names and Internet search engine keyword search terms;

(ii)   using the Adaptive FreeScore Domain Names to direct customers or potential customers to CIC websites offering CIC products and services; and

(iii)   otherwise competing unfairly with Adaptive;

(iv)   using, linking to, transferring, selling, exercising control over, or otherwise owning the Infringing Domain Name or any other domain name that incorporates, in whole or in part, any of the Adaptive FreeScore Trademarks;

B.   Ordering CIC, within ten (10) days after service of judgment, to transfer ownership and control of the Infringing Domain Name to Adaptive;

C.   Awarding compensatory damages in an amount to be proven at trial, together with appropriate interest thereon;

D.   Ordering an accounting by CIC of all gains, profits and advantages derived from CIC's unlawful activities realized by CIC from its acts of unfair competition and false advertising, together with appropriate interest thereon;

E.   Awarding exemplary and punitive damages sufficient to punish CIC for its oppressive, malicious and/or fraudulent behavior and to deter similar conduct by CIC and others;

F.   Awarding Adaptive prejudgment interest pursuant to the Lanham Act;

G.   Awarding Adaptive's costs in this action, together with reasonable attorneys' fees; and

H.   Any such further relief as this Court may deem just and proper.

Dated:   New York, NY
         June 21, 2010

Respectfully submitted,
Greenberg Traurig, LLP

By: *Robert Horowitz* (signature)

Robert A. Horowitz (horowitzr@gtlaw.com)
Toby S. Soli (solit@gtlaw.com)
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Adaptive Marketing LLC*

and

George W. M. Thomas, Esq.
20 Glover Avenue
Norwalk, CT 06850
Telephone: (203) 674-7069

# EXHIBIT A

# BRANDWEEK

## Experian Says Goodbye to Freecreditreport.com Band

May 19, 2010

- Elena Malykhina

- Elena Malykhina



Experian is looking to sing a new tune with the launch of a Web site called **freecreditscore.com**. In the process, the credit bureau is parting ways with the band made popular in its **freecreditreport.com** ads, and kicking off a search for a replacement.

With the launch of freecreditscore.com, Experian is shifting its focus from credit reports to credit scores. Using a different band in new ads reflects that transition, said Chris Moloney, svp and CMO of Experian's U.S. consumer direct unit. The company is spending between $10 and $15 million on the effort.

"[Freecreditscore.com] is going to be our premier brand. We found that there's a desire for people to get their credit score, especially in a tough economy," Moloney said. "That's the focus of the brand—to address that need."

Moloney added that Experian is not shutting down freecreditreport.com, a product that offers daily credit report monitoring and alerts of key changes, but rather broadening the message based on a " general hot topic for Americans." Past ads, he said, featured the band singing about issues that appealed to twentysomethings (like getting a car loan). The new ads, created by The Martin Agency,

address broader topics.

Freecreditreport.com's ads last year were **challenged by the Federal Trade Commission**, when the government organization released online videos telling consumers that the FTC is the only one that offers credit reports without hidden fees. When asked if Experian is shifting focus to a new service due to the FTC's claims, Moloney said no. "We're diversifying our products and we haven't eliminated a product because of regulatory reasons," he said.

1 |2NEXT PAGE »



Experian is looking to sing a new tune with the launch of a Web site called **freecreditscore.com**. In the process, the credit bureau is parting ways with the band made popular in its **freecreditreport.com** ads, and kicking off a search for a replacement.

With the launch of freecreditscore.com, Experian is shifting its focus from credit reports to credit scores. Using a different band in new ads reflects

**Advertisement**

Print Powered By FormatDynamics

**BRANDWEEK**

that transition, said Chris Moloney, svp and CMO of Experian's U.S. consumer direct unit. The company is spending between $10 and $15 million on the effort.

"[Freecreditscore.com] is going to be our premier brand. We found that there's a desire for people to get their credit score, especially in a tough economy," Moloney said. "That's the focus of the brand—to address that need."

Moloney added that Experian is not shutting down freecreditreport.com, a product that offers daily credit report monitoring and alerts of key changes, but rather broadening the message based on a "general hot topic for Americans." Past ads, he said, featured the band singing about issues that appealed to twentysomethings (like getting a car loan). The new ads, created by The Martin Agency, address broader topics.

Freecreditreport.com's ads last year were **challenged by the Federal Trade Commission**, when the government organization released online videos telling consumers that the FTC is the only one that offers credit reports without hidden fees. When asked if Experian is shifting focus to a new service due to the FTC's claims, Moloney said no. "We're diversifying our products and we haven't eliminated a product because of regulatory reasons," he said.

As part of the new campaign, Experian is holding live band searches in three cities—New York, Chicago, and Los Angeles—to select bands that will compete online for the grand prize. On May 20, Experian will open the search to other bands through online submissions; consumers will get to vote for their favorites. Ultimately, four finalists will be chosen and unveiled at the MLB All-Star Game on July 13. Each of the final bands will get its own TV spot during the game, per Experian. The winning band will be announced in early August, and will walk the red carpet at the MTV Music Awards in September.

The effort also includes a social media component, which, according to Moloney, will play a major role in building buzz for the new band. Experian has created **Facebook** and **Twitter** pages, and is putting the entire campaign on YouTube once the ads become available. Additionally, a character named Roadie Jack will have a presence on Twitter and Facebook to update consumers on the band search.

Meanwhile, the old band will be phased out, Moloney said. "We aired about 75,000 ads between network and cable TV with the old band. So they had a good run," he said. The farewell ad is a mashup of



the familiar freecreditreport.com commercial, which shows the current band playing at a Renaissance Fair. Then lightning strikes and a voiceover announces: "After three years we're saying goodbye to this band, and with your help we're saying hello to a new one." The ad then directs consumers to freecreditscore.com.

Brad Strothkamp, an analyst at Forrester Research, said Experian's strategy is in-line with rising consumer knowledge about credit scores. But the company faces growing competition in the space from firms such as SmartCredit.com, which offers a service similar to freecreditreport.com.

Strothkamp said a bigger issue for Experian is consumer dissatisfaction with services like freecreditreport.com. "Consumers sign up for the service and it does not turn out to be what they expected. They go there expecting a free credit report and [are] immediately up-sold to a 'for pay' service," he said. "It will be interesting to see what happens once the new campaign hits."

Advertisement

Print Powered By FormatDynamics